George W. Dominick, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 8, 1978, before Judges Rogers, DiSalle and Craig, sitting as a panel of three.

*Louis M. Shucker,* with him *Ellen L. Hyman,* and *Barbara J. Hart,* for petitioner.

*Elsa D. Newman,* Assistant Attorney General, with her *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE DiSALLE, May 1, 1979:

We have before us a petition for review filed by George W. Dominick (Petitioner) from the decision of the Unemployment Compensation Board of Review (Board) dated April 21, 1977, denying benefits pursuant to Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1). We reverse.

Petitioner was employed by the Hotel Easton (Hotel) as a general worker for a period of eight years. During that entire time, he would commence his duties in April and terminate them in October. Over the winter months it was Petitioner's habit to seek similar work in Florida. Each year, however, he was required to submit a formal application to his employer; consequently, he was never assured of an opening at the Hotel for the next tourist season. Focusing on his tenure of employment in 1976, it appears that Petitioner was hired in April of that year, with the understanding that his position would end in October. Consistent with past practices, Petitioner's last day at the Hotel was November 7, 1976.

Since Petitioner testified that he felt work was available for him in Florida during the winter months of 1976-77, when in fact there was none, the Board concluded that he quit his position at the Hotel for an indefinite prospect of future employment. The Board accordingly found Petitioner to be ineligible for compensation. *See Unemployment Compensation Board of Review v. Pennsylvania Power & Light Co.*, 23 Pa. Commonwealth Ct. 220, 351 A.2d 698 (1976); *Eckenrod v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 166, 325 A.2d 320 (1974).

The narrow issue we are faced with is whether Petitioner voluntarily left his employment. This, of course, is a question of law. *Haseleu v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 96, 316 A.2d 159 (1974). Petitioner asserts that there was an oral agreement between him and his employer that his job would terminate at the end of the summer tourist season in Easton. While no verbal or written agreement delineating the specific terms of his tenure exists, it is quite evident that there was an understanding between Petitioner and his employer during the time of his employment. The "terms" of this implied agreement can be gleaned from the past practices of these parties. Most significant is the fact that, toward the end of October, 1976, the employer approached Petitioner and informed him that his room had been rented out to a paying guest. In our view, the obvious import of this was that Petitioner's position was terminated by his employer.

We note parenthetically that it is of no consequence what Petitioner chose to do in the intervening months. Rather than being industrious and seeking further employment in the hotel business in Florida, he could have chosen to remain and attempt to find work in Pennsylvania, failing which, he would probably have

been eligible for benefits. It follows, therefore, that to deny Petitioner benefits by characterizing his behavior as a voluntary quit for the indefinite prospect of future employment was clearly in error.[1] In arriving at this decision, not only did the Board misconstrue the

---

[1] The record is replete with evidence to support Claimant's position that he did not voluntarily quit and that work was not available with his employer during the winter months:

QR: Why do you say part-time?

AC: Because I was employed during a period of time; not for the complete year. Usually this period was from April, May, through to October of each year that I worked there.

. . . .

QR: Could you have continued there another week? Another two weeks? A month?

AC: I assumed I wouldn't be able to.

. . . .

QR: Wasn't there any work for you the rest of November or through into December? At Hotel Easton?

AC: I wasn't informed of that fact.

. . . .

QL: As far as you know, in the 6-8 years that you worked there, was anyone ever hired to take your place after you left?

AC: To the best of my knowledge, he didn't replace me during these winter months.

. . . .

QL: And approximately ten days before you left, was there anything said to you about your room?

AC: Yes, Mr. Theo Rambaugh, vice president and general manager, had informed me that my room had been presold.

QL: You mean to a guest?

AC: Yes.

. . . .

QL: Okay, in any of the years you ever worked there was continuing work ever offered to you?

AC: No. No work was offered to me other than what the agreement was.

QL: All right.

AC: For the previous time.

evidence but the result penalizes Petitioner for returning to a locale where he had good cause to believe continuing employment would be available to him.

### ORDER

AND Now, this 1st day of May, 1979, the order of the Unemployment Compensation Board of Review, dated April 21, 1977, denying benefits to George W. Dominick, is hereby reversed and the case is remanded for computation of benefits.

---

QL: All right, is it your understanding that the general nature of the hotel business is that during the winter months in the northern states, the hotel business decreases?

AC: At Hotel Easton it slacks down to the minimum.

QL: Okay, have you been looking for work now since you've been out of work for the Hotel Easton?

AC: Yes, I have.